**STATE of Missouri, Respondent,**

v.

**Jesus RODRIGUEZ, a/k/a, Jose Garcia Hernandez, Appellant.**

**No. KCD 30102.**

Missouri Court of Appeals, Western District.

April 2, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 1, 1979.

Jon M. Krebbs, Asst. Public Defender, Seventh Judicial Circuit, Liberty, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

Before SOMERVILLE, P. J., and PRITCHARD and MANFORD, JJ.

SOMERVILLE, Presiding Judge.

Defendant was indicted for selling heroin, a Schedule I controlled substance (Section 195.020, RSMo Supp.1975 and Section 195.-200, RSMo Supp.1975). A jury found defendant guilty as charged and fixed his punishment at life imprisonment. Judgment and sentence were rendered and pronounced accordingly.

The sufficiency of the evidence to support the guilty verdict has not been challenged by defendant and a fairly terse recital of the evidence demonstrates why he has not done so. The state's evidence, which stands uncontradicted, disclosed that at approximately 8:00 P.M. on November 1, 1977, at a motel in Kansas City, Clay County, Missouri, defendant, whose address was Tijuana, Mexico, sold eight or nine ounces of heroin to an undercover agent for the Kansas City, Missouri, Police Department for the price and sum of $16,000.00.

Defendant casts his lot on appeal with the assertion of a single point, namely, error on the part of the trial court in refusing to instruct the jury to disregard a statement attributed to defendant by one of the state's witnesses. The events which ultimately peaked in this single point on appeal ran the following course: During the course of the undercover agent's direct testimony, and more particularly while he was testifying about the specifics of the transaction itself, he was asked, without objection, whether there was any discussion about obtaining "other heroin from the defendant". The undercover agent's ultimate response to this line of inquiry was to the effect that defendant said he would like to deal in larger quantities and he preferred that arrangements be made for future sales to take place at a house he had in southern California. After this response by the undercover agent, counsel for defendant stated, "I'd like to object" and then approached the bench. At this point an extended colloquy occurred between court and counsel "out of hearing of the jury", the gist of which, from the standpoint of defense counsel, was that the aforementioned statements attributed to defendant were undisclosed by the state in its response to a proper request for discovery, and the gist of which, from the standpoint of counsel for the state, was that the statements were sprung as a surprise by the undercover agent and had not previously been reduced to writing or known by the state. By way of concluding the verbal sparring between counsel, the trial court announced that defendant's objection would be sustained. The following then occurred "in the hearing of the jury":

"MR. KREBBS [Defense Counsel]: Your Honor, I'd also like to request the jury to be told to disregard.

THE COURT: Disregard what?

MR. KREBBS: The portion of his answer that he already gave.

MR. DeCUYPER [Counsel for the State]: Well, I think it should be specifically stated as to what portion.

THE COURT: *Would you mind, if you would tell me what you are really requesting.*

MR. KREBBS: Well, I would like for the statements attributed to the, to Mr. Rodriguez that this witness just indicated as to, *I believe the officer made a statement as to he wanted to make the deal out there, and that he had a house, and all of that stricken from the record.*

THE COURT: *Those two things?*

MR. KREBBS: *Yes, sir.*

THE COURT: *Very well. Those will be stricken from the record.*" (Emphasis added.)

Interrogation of the witness from this point on occurred uninterrupted and no motion or request of any kind was made that the jury be "told to disregard" anything. In fact, the matter was never broached again until defendant raised it in his motion for new trial.

Defendant seeks to cast a pall of prejudice over the incident by arguing on appeal that his "theory of defense" was that he was a "patsy" for an informant of the Kansas City, Missouri, Police Department and therefore evidence of his willingness to engage in future sales was highly detrimental to his avowed "theory of defense". Defendant did not take the stand or call any witness in his behalf.

 Common sense dictates that any one or all of five reasons stand in good stead as bases for rejecting defendant's single point on appeal. *One,* testimony was previously introduced by the state, without objection, that "he [defendant] wanted to do more business with us and he [defendant] wanted to see this deal go down right so we could do business", and when the trial court pressed defense counsel for specifics the latter did not direct his objection to statements attributed to defendant about his willingness to engage in future sales but restricted it to particulars as to where the future sales would occur, i. e., that "he [defendant] wanted to make the deal out there, and that he had a house", all of which is highly inconsistent with defendant's presently professed "theory of defense" and seems to emphasize the harmless irrelevancy of the statements to which the specific objection was lodged. *Two,* when the trial court pinned defense counsel down as to specifics the only relief requested was that all reference to defendant wanting "to make a deal out there, and that he had a house" be "stricken from the record", which is exactly what the trial court did. Inasmuch as defendant received all of the relief which he specified when responding to the trial court's demand for specifics, he will not presently be heard to complain that he should have been given additional relief. *State v. Jackson,* 511 S.W.2d 771, 775 (Mo.

1974); and *State v. Lamb,* 468 S.W.2d 209, 211 (Mo.1971). *Three,* the trial court at the appropriate stage in the trial (immediately prior to the opening statements of counsel), as it was required to do, instructed the jury per MAI–CR 2.02 which in part told the jury that "[y]ou will also disregard . . anything which the Court orders stricken from the record". Thus, in a very real sense the jury was instructed to disregard all objectionable statements which lie at the root of defendant's single point on appeal. *Four,* defendant should not be permitted to complacently sit back and defer seeking a ruling on his earlier request to instruct the jury to disregard the objected to statements attributed to defendant until filing his motion for new trial, particularly in light of the fact that the trial court specifically ordered them stricken from the record in compliance with defense counsel's highly specific request for relief during the course of the trial. The course of events pursued by defendant smacks of an abandonment of his earlier request that the jury be instructed *to disregard* the complained of statements. *State v. Young,* 534 S.W.2d 585, 588 (Mo.App.1976). *Fifth,* and last, error which might otherwise attain the height of reversible error in a close case doesn't necessarily attain the height of reversible error in a case where the evidence of guilt is strong and stands uncontradicted. *State v. Belleville,* 530 S.W.2d 392, 395 (Mo.App.1975).

As any one or all of the five reasons set forth above effectively emasculates defendant's single point on appeal, the judgment below should be affirmed.

Judgment affirmed.

All concur.